UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| LEON EUGENE MILLER, | ) | CASE NO. C04-1289-MJP-MAT |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| GARY FLEMING, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

INTRODUCTION

Petitioner Leon Eugene Miller was convicted in 2000 in the Superior Court of Washington, Spokane County, of two counts of first degree child molestation. The court sentenced him to 66 months imprisonment, which he is now serving at the Monroe Correctional Complex in Monroe, Washington. Petitioner has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, in which he claims that his conviction was obtained in violation of the Confrontation Clause of the Sixth Amendment.[1] Having carefully reviewed the parties' submissions, the court concludes that

---

[1] Venue for a habeas petition lies either in the district where petitioner was convicted or in the district where he is incarcerated. *See* 28 U.S.C. § 2241(d). In this instance, petitioner's

REPORT AND RECOMMENDATION
PAGE -1

01  the petition should be granted.

02  <u>BACKGROUND</u>

03  On direct appeal, the Washington Court of Appeals summarized the facts of petitioner's
04  case as follows:

05  On June 22, 2000, K., a seven-year-old girl, was home with J., her twelve-year-old sister, and their grandfather. Mr. Miller came to the house to speak
06  with their father about a car. Although their father was not home, Mr. Miller came in the house to wait.

07  Mr. Miller sat on the couch and watched television with the two girls. K. had
08  fallen asleep on the couch. The grandfather left the house to run an errand, while J. went to clean her room. When J. came back into the room, she saw Mr. Miller
09  touching K.'s vaginal area.

10  His hand was under K.'s clothes. J. woke K. up and took her outside. J. then called 911 and told the operator what she had seen. The operator told J. to wait for
11  her parents to come home as they would know what to do. When J. got off the phone, she could not find K. She went back to the living room and saw K. Mr.
12  Miller was touching K. again and she was telling Mr. Miller no. J. again took K. out of the house and called the police, who arrived several minutes later.

13  Officer Blaine Kakuda responded to the call. He spoke with K., who was
14  scared and timid. K. told the officer that her dad's friend had put his hand down her pants while she was asleep. She said his hand was inside her underwear. The officer
15  then arrested Mr. Miller.

16  K. told a nurse at the emergency room that Mr. Miller touched her. She also told the emergency room doctor that Mr. Miller put his finger where she "peed." The
17  doctor noticed scratches on K.'s abdomen. Her vaginal area was red, which was consistent with irritation or rubbing.

18  Mr. Miller waived his *Miranda* rights and spoke with Detective Hilding
19  Anderson. Mr. Miller said that K. was climbing on him in a sexual manner, but his hand was not in her pants. He said he might have accidentally touched her when he

20  ─────────────────────

21  conviction arose in Spokane, which is located in the Eastern District of Washington, but he is incarcerated in the Western District. Therefore, his habeas petition can be considered in this
22  district.

REPORT AND RECOMMENDATION
PAGE -2

01   was pushing her away.

02   The State charged Mr. Miller with one count of first degree rape of a child and one count of first degree child molestation. It later amended the information to one count of first degree child rape or, in the alternative, first degree child molestation, and one count of first degree child molestation.

05   (Doc. #12, Ex. 2 at 1-3) (footnote omitted).[2]

06   Prior to Petitioner's trial, the court held an evidentiary hearing to determine the admissibility of K.'s hearsay statements to (1) Officer Kakuda, (2) the nurse at the emergency room (Nurse Martinez), and (3) the emergency room doctor (Dr. Minten). (*Id*., Ex. 3 at 6.) The court found that K. was not competent to testify at trial, but that her hearsay statements were admissible under various exceptions to the hearsay rule. (*Id*., Ex. 2 at 3.) Specifically, the court admitted all of the statements pursuant to the child hearsay statute, Revised Code of Washington (hereinafter, "RCW") 9A.44.120; and as alternative grounds for admission, the court admitted the statements to Officer Kakuda pursuant to the present sense impression exception, Washington Rules of Evidence, ER 803(a)(1) (Doc. #12, Ex. 2 at 5), and the statements to Nurse Martinez and Dr. Minten pursuant to the medical diagnosis or treatment exception, Washington Rules of Evidence, ER 803(a)(4). (*Id*. at 6-7).

17   The jury found petitioner guilty of two counts of first degree child molestation, and the court sentenced him to 66 months. Petitioner appealed to the Washington Court of Appeals, which affirmed his convictions. (Doc. #12, Ex. 2 at 1). His subsequent Motion for Reconsideration was denied (*id*., Exs. 8, 9), as was his Petition for Review in the Washington

---

[2] The unpublished opinion of the Washington Court of Appeals is also available at *State v. Miller*, No. 200018-3-III, 110 Wash. App. 1028 (Feb. 12, 2002).

Supreme Court. (*Id.*, Exs. 10, 11).

On May 27, 2003, Petitioner filed a Personal Restraint Petition (hereinafter, "PRP") in the Washington Court of Appeals. (*Id.*, Ex. 13). The court dismissed the PRP. (*Id.*, Ex. 14). Similarly, his Motion for Discretionary Review in the Washington Supreme Court was denied. (*Id.*, Ex. 16). Petitioner's state collateral review by way of this PRP thus became final September 30, 2003. (*Id.*, Ex. 19). Petitioner filed no other PRPs in the Washington courts.

Turning to the federal courts, petitioner filed, on or about May 28, 2004, the petition for writ of habeas corpus now under consideration. In it, he has framed the following ground for relief:

> "Conviction obtained in violation of the Confrontation Clause of the Sixth Amendment of the United States Constitution."[3]

(Doc. 4 at 5, 8.) He clarifies this rather broad assertion in his Reply, where he contends that the trial court's admission of K.'s hearsay statements through the testimonies of the three prosecution witnesses to whom she had made these statements (Officer Kakuda, Nurse Martinez, and Dr. Minten) violated his rights under the Sixth Amendment. Specifically, he argues that his right to be confronted with the witnesses against him was violated because he was not afforded the opportunity to cross-examine K. at the time she made the statements nor during his trial. (*See* Doc. 13 at 18). He further claims that the admission of the statements was not harmless error. (*See id.* at 10-16).

---

[3] The Sixth Amendment provides in pertinent part that: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.

01  After respondent filed an answer and petitioner a reply, the court issued a Report and
02  Recommendation ("R&R") on December 23, 2004. (Doc. #16). In the R&R, the court found that
03  petitioner had not properly exhausted his Sixth Amendment claim in state court because he had
04  not presented the same legal theory to the state court that he used here. (*Id*. at 16). The court
05  further found that petitioner had procedurally defaulted on the claim and had not shown a basis
06  for excusing this procedural default. Accordingly, the court recommended that the petition be
07  dismissed.

  After the court issued the R&R, the Ninth Circuit Court of Appeals rendered its decision
09  in *Bockting v. Bayer,* 399 F.3d 1010 (9th Cir. 2005), *Opinion Amended on Denial of Rehearing*,
10  408 F.3d 1127 (9th Cir. 2005), *Rehearing en Banc Denied,* 418 F.3d 1055 (9th Cir. 2005).
11  *Bockting* held that the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004),
12  applies retroactively to collateral proceedings, such as the instant habeas petition.[4] Because
13  *Crawford* changed the standard governing claims made under the Confrontation Clause of the
14  Sixth Amendment, the District Judge here referred the matter back to the undersigned to consider
15  petitioner's claim under *Bockting/Crawford*. (Doc. #20).

16  After additional briefing was complete, the court stayed consideration of the petition until

---

[4] Thus far, no petition for *certiorari* has been filed in the Supreme Court pertaining to *Bockting*. However, given the fact that the Ninth Circuit's decision to apply *Crawford* retroactively stands alone among all the circuit courts that have considered the question, it appears likely that, as one district court put it, "[t]he issue. . . is sure to be one decided in the future by the Supreme Court." *Lewis v. Woodford*, 2005 WL 2643172, *7 n.4 (E.D. Cal., July 12, 2005). Indeed, in his dissent from the Ninth Circuit's denial of rehearing en banc in *Bockting*, Judge O'Scannlain predicted that "our holding that *Crawford* applies retroactively is likely to meet the same fate as our similar holding in *Summerlin* with regard to *Ring* – namely, speedy reversal [by the Supreme Court]." 418 F.3d at 1060.

REPORT AND RECOMMENDATION
PAGE -5

the Ninth Circuit had resolved the petition for rehearing en banc in *Bockting*. On August 11, 2005, the Ninth Circuit denied the petition for rehearing en banc. *Bockting v. Bayer,* 418 F.3d 1055 (9th Cir. 2005). The matter is now ready for review.

### DISCUSSION

The issues before the court are (1) whether *Crawford* applies to the instant petition; (2) if so, whether *Crawford* governs the hearsay statements at issue here; (3) if so, whether the Washington Court of Appeals' decision was contrary to *Crawford*; and, (4) if so, whether any *Crawford* violations were harmless errors.

1. Whether *Crawford* Applies to the Instant Petition.

At the outset, the court must determine whether the Supreme Court's decision in *Crawford* applies to petitioner's claim. For the reasons set forth below, the court concludes that it does. A brief review of the rapidly-unfolding law in this area will help explain this conclusion.

After petitioner' appeal was denied by the state court, the Supreme Court decided *Crawford v. Washington,* 541 U.S. 36 (2004). *Crawford* changed the standard for determining whether the admission of certain hearsay statements violates the accused's right under the Sixth Amendment to confront witnesses. In *Crawford,* the Court held that the Confrontation Clause bars the admission of "testimonial" hearsay unless two conditions are satisfied: (1) the declarant is unavailable, and (2) the accused has had a prior opportunity to cross-examine the declarant. This holding altered the prior rule, originally articulated in *Ohio v. Roberts,* 448 U.S. 56, 66 (1980), that the admission of hearsay did not violate the Confrontation Clause if the statement fell under a firmly rooted hearsay exception or otherwise bore particularized guarantees of trustworthiness. As the court noted in the prior R&R, when petitioner filed his habeas petition

01 here, he relied upon *Crawford* to argue that his Sixth Amendment rights had been violated,

02 whereas in the state court he had relied upon *Roberts*. (Doc. #16 at 14-16). In each instance, he

03 relied upon the prevailing law at the time he filed the petition or appeal.

04 While petitioner's federal habeas petition was pending, the Ninth Circuit decided *Bockting*.

05 In *Bockting,* the Ninth Circuit held that under the framework for retroactivity analysis set forth

06 in *Teague v. Lane*, 489 U.S. 288 (1989), the decision in *Crawford* announced a "watershed rule,"

07 without which the likelihood of an accurate conviction is seriously diminished. 399 F.3d at 1016.

08 Accordingly, the Ninth Circuit held that the rule announced in *Crawford* must be given retroactive

09 effect. *Id.*

10 The Ninth Circuit then applied the new rule to the claim raised by the petitioner in

11 *Bockting*, a claim that was similar to the one presented here. The petitioner in *Bockting* was

12 convicted of sexually abusing his six-year old stepdaughter after "a trial in which the only witness

13 to the conduct [his stepdaughter] did not testify at trial, but whose interview with a detective was

14 admitted as key evidence." 399 F.3d at 1011. Applying the new standard articulated in *Crawford*,

15 the Ninth Circuit found that admission of the hearsay evidence from the detective violated

16 *Crawford's* requirement that a declarant be subject to cross-examination. *Id.* at 1021. Therefore,

17 the court held that the Nevada Supreme Court, in using the pre-*Crawford* standard which was the

18 prevailing standard at the time, had rendered a decision that was "contrary to established Supreme

19 Court precedent in *Crawford*, as made retroactive under *Teague* and *Summerlin*." *Id.*

20 In addition, the Ninth Circuit found that this *Crawford* error was not harmless because

21 "[t]he detective's testimony regarding [the stepdaughter's] interview was a critical piece of

22 evidence, particularly in view of [her] inconsistent testimony at the preliminary hearing, and

REPORT AND RECOMMENDATION
PAGE -7

01  weaknesses in [her mother's] testimony." 408 F.3d at 1127.  Thus, the court found that

02  "admission of the [hearsay] requires reversal," and the court granted the writ. *Id.*

03        Respondent argues that *Bockting* should have no effect on the court's previous conclusion

04  that petitioner had failed to exhaust his claim in state court and is therefore barred from presenting

05  it here. (Doc. #23 at 4-5).  Respondent points out that the Supreme Court has counseled that the

06  exhaustion inquiry is distinct  from the retroactivity inquiry.  *See Horn v. Banks*, 536 U.S. 266,

07  272 (2002).  Therefore, respondent contends, "[i]f petitioner has not properly exhausted his

08  federal habeas corpus claim . . ., retroactivity [of *Crawford*] has no effect." (Doc. #23 at 6).

09        Petitioner counters by arguing that the claim in *Bockting* was not found to be unexhausted

10  by the Ninth Circuit and neither should the claim here. (Doc. #24 at 2).  Petitioner contends that

11  the claims in *Bockting* and here are "equally broad," and that because the Ninth Circuit applied

12  *Crawford* to the claim in *Bockting* and resolved the issue on the merits, the instant claim should

13  similarly be resolved on the merits.

14        Having considered the arguments of the parties, the court concludes that several factors

15  weigh in favor of resolving the case on the merits.  First, the Ninth Circuit in *Bockting* endorsed

16  reading a "retroactivity exception" into the exhaustion requirement.  In discussing the interplay

17  between retroactivity  and exhaustion, the *Bockting* court commented that "the [Supreme] Court

18  has impliedly endorsed the application of *Teague* in the [habeas] context." 399 F.3d at 1021.  The

19  Ninth Circuit also found that Congress "intended to preserve the *Teague* exceptions [in habeas

20  cases] because [the statute governing habeas petitions] explicitly provides for their application in

21  proceedings involving state habeas petitions." *Id.*, *citing* 28 U.S.C. § 2254(e).  Finally, the Ninth

22  Circuit implied that a strict reading of the exhaustion requirement – one that would not permit a

REPORT AND RECOMMENDATION  
PAGE -8

petitioner to benefit from retroactive application of a new rule – raises a "serious constitutional problem . . . by depriving individuals of bedrock principles of Due Process." *Id.*, *citing Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003).

A second reason for finding that petitioner should be permitted to proceed here and not be required to return to state court to exhaust his *Crawford* claim, is that the Washington Supreme Court has decided, contrary to the Ninth Circuit's decision in *Bockting*, that *Crawford* does *not* apply retroactively. *See In re: Markel*, 154 Wash. 2d 252 (2005). Thus, it would be an exercise in futility to require petitioner to return to state court to exhaust a claim based on *Crawford*. In sum, the Ninth Circuit's decision in *Bockting* and the Washington Supreme Court's decision in *Markel* lead the court to conclude that petitioner's petition here should proceed and that *Crawford* should be applied to resolve his claim on the merits.

2. Whether *Crawford* Governs the Hearsay Statements at Issue Here.

In applying *Crawford* to the statements by the victim, K., to Officer Kakuda, Nurse Martinez, and Dr. Minten, the first question that arises is whether these statements were "testimonial," and thus triggered the protections afforded by the Confrontation Clause. *Id.* at 1374. Although the Court did not spell out a comprehensive definition of "testimonial," it noted that the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* In addition, "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," are also considered to be testimonial. *Id.* at 1364.

Respondent concedes that K.'s statement to Officer Kakuda was testimonial and thus are

REPORT AND RECOMMENDATION
PAGE -9

protected under *Crawford*.[5] (*see* Doc. 23 at 8). Respondent argues that K.'s statements to Nurse Martinez and Dr. Minten, however, were not testimonial and, therefore, their admission did not run afoul of the Sixth Amendment. Respondent contends that *Crawford* emphasized "in-court testimony or its functional equivalent or police interrogations," as testimonial statements and that consequently, out-of-court statements to a nurse or a doctor are non-testimonial. (Doc. #23 at 7).

It appears that the issue is more nuanced than respondent's argument suggests. Petitioner cites several cases in which the courts found that out-of-court statements to medical professionals were, in fact, testimonial under *Crawford*. *See People v. Vigil,* 104 P.3d 258, 265 (Colo. App. 2004); *In re T.T.,* 351 Ill. App.3d 976, 993 (2004). In *Vigil,* a seven-year-old victim of sexual assault revealed to a doctor the identity of the person who had assaulted him. 104 P.3d at 265. The court found that the victim's statement was testimonial because the doctor belonged to a child protection team that assisted in cases of suspected child abuse, and the doctor had performed a "forensic sexual abuse examination." *Id.* Thus, the examination was linked to legal proceedings against the perpetrator. Similarly, in *T.T,* the court held that the victim's statement was testimonial because the medical examination was performed for the purpose of pursuing a prosecution. 351 Ill. App.3d at 993.

In contrast to the cases cited by petitioner, several courts have recently found statements by victims to medical professionals to be non-testimonial. In *State v. Vaught,* 682 N.W.2d 284 (2004), the court held that a four-year-old's statements to a doctor were non-testimonial, because

---

[5] While conceding that the statement to Officer Kakuda was testimonial, respondent argues, as discussed below, that admission of the statement at trial was harmless error.

REPORT AND RECOMMENDATION
PAGE -10

the sole purpose of the medical examination was for treatment and that there was no apparent purpose to develop testimony for trial. *Id.* at 326, 682 N.W.2d 284. Similarly, in *State v. Fisher,* __ Wash. App.__, 108 P.3d 1262, 1269 (2005), the court held that the statement made by a child abuse victim to a doctor was not testimonial because the statement was made the morning after the assault, in response to the doctor asking the child what happened. The court in *Fisher* relied on the fact that the doctor was not a government employee and that there was no indication that the doctor's questions were designed to prepare testimony for trial. *Fisher,* 108 P.3d at 1269.

The basic principle to be gleaned from these cases seems to be that statements made for medical purposes are non-testimonial while statements made for prosecutorial purposes are. This is consistent with the Court's characterization of statements as testimonial when those statements are made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford* at 1364. Petitioner himself appears to accept this medical/legal distinction and concedes that "to the extent that K's statements responded to the nurse's and doctor's questions about the physical exam . . . the statements are admissible. . . . " (Doc. #26 at 9). But petitioner argues that to the extent K's statements "concerned fault or identity," the court should find the statements to be testimonial and therefore subject to the restrictions imposed by *Crawford*.[6]  (*Id.*)

Applying these nascent principles – which do not appear to have been applied by the Ninth Circuit in any cases thus far – to the claim here, the court finds that the statements to Nurse Martinez and Doctor Minten are, as petitioner suggests, in part testimonial and in part non-

---

[6] The court notes that respondent did not file a supplemental brief on this issue and thus did not respond to this argument made by petitioner.

REPORT AND RECOMMENDATION
PAGE -11

testimonial. Insofar as they relate to the identity of the person who touched K., the statements are testimonial. It appears that both the nurse and doctor worked in the emergency room at the local hospital and came into contact fairly frequently with victims of sexual abuse. (Doc. #18, Ex. 20 at 781, 832). When they did, they followed a "very strict protocol," as Dr. Minten called it. *Id*. at 834). This protocol included the search for, and possible collection of, evidence. As Nurse Martinez described it, she was "assigned to do [K.'s] sexual assault, the kit, we call it." (*Id*. at 776). The "kit" included forms and procedures "for collection of evidence that we go through." (*Id*.) Thus, while the nurse and doctor may not have technically been part of a "child protection team," as the doctor was in *Vigil*, they formed a de facto child protection team by virtue of the specialized manner in which they performed their jobs. Therefore, K.'s statements to them were made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford* at 1364. Accordingly, the statements made by K. inculpating petitioner are testimonial and trigger the protections imposed by *Crawford*.

        3. <u>Whether the State Court Decision was Contrary to *Crawford*.</u>

As previously mentioned, in *Crawford*, the Court held that testimonial statements of a witness who is unavailable from trial can be admitted only when the defendant has had a prior opportunity to cross-examine the witness. *Id.* at 1374. It is undisputed that petitioner here did not have an opportunity to cross-examine K. Accordingly, the admission at trial of K's testimonial statements to Officer Kakuda, Nurse Martinez, and Dr. Minten, violated the Confrontation Clause under *Crawford*.

Ordinarily, a federal habeas court owes much deference to a state court decision, and can

01 only upset that decision if the state court decision is "objectively unreasonable."  *Lockyer v.*
02 *Andrade*, 538 U.S. 63, 69 (2003).  However, where the state court applied the incorrect legal
03 standard, the state court decision is considered "contrary" to federal law, and such deference is
04 not warranted.  *See Bockting*, 399 F.3d at 1021 ("Thus, the Nevada Supreme Court's decision was
05 'contrary to' established Supreme Court precedent in *Crawford* as made retroactive under *Teague*
06 and *Summerlin*.")  Because the Washington Court of Appeals applied the *pre-Crawford* standard
07 in deciding petitioner's appeal, its decision was contrary to "established federal law," *i.e.*,
08 *Crawford* made retroactive under *Bockting*.  The remaining question is how harmful were the
09 *Crawford* violations that occurred at petitioner's trial.

10        4. <u>Whether the *Crawford* Violations Were Harmless Errors</u>.

11       Relief may be granted on a federal habeas corpus petition only if the state court erred and
12 the error had a "substantial and injurious effect or influence" in determining the jury's verdict.[7]
13 *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  "Under this standard, error is harmless if we
14 can say with fair assurance that it did not have a substantial effect, injurious to the defendant, on
15 the jury's decision-making process." *Arnold v. Runnels*, 421 F.3d 859, 867 (9th Cir., 2005).  A
16 federal district court further described the "harmless error" analysis in habeas cases as follows:

17       The proper question in assessing harm in a habeas case is to ask whether "the
      error substantially influenced the jury's decision."  If the court is convinced that the
18       error did not influence the jury, or had but very slight effect, the verdict and the
      judgment should stand.  If, on the other hand, the court is not fairly assured that there
19       was no effect on the verdict, it must reverse.  In the narrow circumstance in which the

---

[7] In its original opinion in *Bockting*, the Ninth Circuit applied an erroneous standard for "harmless error." 399 F.3d at 1022, *citing Neder v. United States*, 527 U.S. 1 (1999).  In its amended opinion, the Ninth Circuit corrected the error and replaced the *Neder* standard with the *Brecht* standard.  *Bockting v. Bayer*, 408 F.3d 1127 (2005).

REPORT AND RECOMMENDATION
PAGE -13

court is in grave doubt about whether the error had substantial and injurious effect or influence in determining the jury's verdict, it must assume that the error is not harmless and the petitioner must win.

*German v. Lamarque*, 2005 WL 1926625, *10 (N.D. Cal., August 10, 2005) (citations omitted).

Applying the *Brecht* standard for harmless error, it appears that the admission of K.'s statements to Officer Kakuda, Nurse Martinez, and Doctor Minten had a "substantial and injurious effect or influence" on the jury's verdict. Respondent argues that because K.'s sister testified that she saw petitioner commit the same unlawful acts as described by K., the admission of K.'s statements was harmless. The court agrees that the testimony of K.'s sister corroborated K.'s statements and provided additional evidence against petitioner for the jury to consider.[8] However, the court cannot imagine that the jury here was not "substantially influenced" by the repeated statements by K., through the three witnesses, that petitioner had touched her in various inappropriate ways. These statements effectively put K. in the witness stand at petitioner's trial without being subject to cross-examination. Indeed, the prosecutor stated four times in her closing argument that the jury had "heard from [K]" (Doc. #12, Ex. 20 at 940, 947, 969, 971). Under these circumstances, the court finds that the admission at trial of K.'s testimonial statements had a "substantial and injurious effect or influence" on the jury's verdict. Accordingly, the erroneous admission of the statements was not harmless and petitioner's habeas petition should be granted.

/ / /

/ / /

---

[8] Indeed, were the harmless error question simply whether the "untainted evidence was sufficient to support a finding of guilt," as it was in petitioner's direct appeal in the state court (see Doc. #12, Ex. 2 at 5), the court would find that the sister's testimony was sufficient. However, the standard here is different.

REPORT AND RECOMMENDATION
PAGE -14

## CONCLUSION

For the foregoing reasons, petitioner's petition for a writ of habeas corpus should be granted. A proposed Order accompanies this Report and Recommendation.

DATED this  3rd  day of  November , 2005.

*[signature]*
Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -15