1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

9

10

11

12

LEON EUGENE MILLER,

                              Petitioner,

v.

GARY FLEMING,

                              Respondent.

No. C04-1289P

ORDER GRANTING PETITION
FOR WRIT OF HABEAS CORPUS

13

14

15

16

        This matter comes before the Court on a Report and Recommendation (Dkt. No. 32) by

Magistrate Judge Mary Alice Theiler on Petitioner Leon Miller's petition for a writ of habeas corpus

under 28 U.S.C. § 2254.  Judge Theiler has recommended granting the petition.

17

18

19

20

21

22

23

24

25

26

        Having reviewed the Report and Recommendation, Respondent's objections, Petitioner's

reply, and the balance of the record in this case, the Court ADOPTS IN PART the Report and

Recommendation and GRANTS the habeas petition.  The Court declines to adopt the Report and

Recommendation to the extent it recommends that certain hearsay statements made by a seven-year

old child to a nurse and physician should be regarded as "testimonial" under Crawford v. Washington,

541 U.S. 36 (2004).  However, the Court finds that the admission of hearsay statements made by the

child to a police officer violated Petitioner's Confrontation Clause rights and that this error was not

harmless.  Therefore, the Court adopts the balance of the Report and Recommendation, including the

conclusion that the habeas petition should be granted.  The reasons for the Court's ruling are set forth

below.

ORDER - 1

**Background**

Judge Theiler's Report and Recommendation ("R&R") provides a thorough background of this matter.   For ease of reference, the Court provides a brief summary of the case and its procedural history below.

1.      Trial Court Proceedings

Petitioner was convicted in 2000 in Spokane County Superior Court on two counts of first degree child molestation.  He received a sentence of 66 months imprisonment.

Petitioner was convicted of molesting K., a seven-year old girl.  On June 22, 2000, K. was at home with her twelve-year old sister J. and her grandfather.  Petitioner came to K.'s house to talk to her father about a car.  K.'s father was not home, but Petitioner came into the house to wait.

Petitioner was watching television in the living room with the girls.  The grandfather left the house to run an errand, and J. went to clean her room.  At trial, J. testified that when she came back to the living room, she saw Petitioner touching K. in her vaginal area.

J. testified that she took K. outside and called 911.  J. testified that when she got off the phone, she could not find K.  J. stated that she went back into the living room and saw Petitioner touching K. again in her vaginal area.   J. called 911 again, and the police arrived soon after.

Police officer Blaine Kakuda responded to the call and interviewed K.  Officer Kakuda testified that K. told him that her dad's friend had put his hand down her pants while she was asleep. Petitioner was arrested.

K. was taken to Deaconess Hospital.  She was examined by Nurse Therese Martinez and by Dr. Nancy Minten.   The nurse and the physician both testified that K. told them that she had been touched in her private areas.  The doctor also noticed scratches on K.'s abdomen and that her vaginal area was red.

ORDER - 2

1    The trial court found that K. was not competent to testify at trial.  Following an evidentiary

2  hearing, the court allowed K.'s hearsay statements to Officer Kakuda, Nurse Martinez, and Dr.

3  Minten to be admitted.

4    2.    State Court Direct Appeal and PRP

5    After his conviction, Petitioner filed a direct appeal in the Washington Court of Appeals.  The

6  Court of Appeals found that the trial court erred in admitting K.'s hearsay statements to Officer

7  Kakuda because it was not clear that K. was competent at the time she made her statement to the

8  officer.[1]  However, the Court of Appeals affirmed the conviction because it found that other evidence

9  in the record was sufficient to support the conviction.  The state Supreme Court denied a petition for

10  discretionary review.

11    Petitioner later filed a personal restraint petition (PRP) in the state Court of Appeals, which

12  was denied.  The state Supreme Court denied his petition for discretionary review of the PRP in

13  September 2003.

14    3.    Supreme Court's Decision in *Crawford*

15    In March 2004, the United States Supreme Court issued its decision in Crawford v.

16  Washington, 541 U.S. 36 (2004).  The Crawford court held that the Confrontation Clause prohibits

17  the admission of "testimonial" out-of-court statements unless the declarant is unavailable and the

18  defendant has had a prior opportunity to cross-examine the declarant.  Among other things, the Court

19  held that statements taken by police officers in the course of interrogations were testimonial.  Id. at

20  52.  However, the Court declined to provide a comprehensive definition of the term "testimonial."

21  Id. at 68.

22

23

24    [1]  The Court of Appeals found that K.'s statements to Officer Kakuda were admitted in violation
of state law (RCW 9A.44.120), without making a finding that Petitioner's constitutional rights under the
Confrontation Clause had been violated.  If the state Court of Appeals had found that a constitutional

25  error had occurred, it would have been required to find that such error was "harmless beyond a
reasonable doubt."  State v. Powell, 126 Wn.2d 244, 267 (1995).  Here, the Washington Court of

26  Appeals made no findings that the error in admitting K.'s statements to Officer Kakuda were harmless
beyond a reasonable doubt.

4.      Proceedings in this Court

In May 2004, Petitioner filed a pro se petition for a writ of habeas corpus in this Court, alleging that his conviction had been obtained in violation of the Confrontation Clause.  Petitioner later obtained counsel to represent him in this matter.

On December 23, 2004, Judge Theiler issued an R&R on the petition.  Judge Theiler found that Petitioner had failed to exhaust his remedies in state court.  Judge Theiler also found that because Petitioner was procedurally barred from returning to Washington courts to exhaust the claim, his petition should be dismissed with prejudice.  Petitioner filed objections to the R&R.

Several weeks after the initial R&R was issued, the Ninth Circuit issued its decision in Bockting v. Bayer, 399 F.3d 1010 (9th Cir. 2005), which held that the Crawford decision applies retroactively to collateral proceedings.  The Court referred this matter back to Judge Theiler for reconsideration in light of Bockting.

Judge Theiler called for supplemental briefing from the parties.  After the supplemental briefing was completed, Judge Theiler stayed consideration of this matter until the Ninth Circuit decided whether to rehear Bockting en banc.  On August 11, 2005, the Ninth Circuit declined to rehear Bockting en banc.  418 F.3d 1055 (9th Cir. 2005).

On November 7, 2005, Judge Theiler issued a new R&R, which recommended that the habeas petition be granted in light of Bockting.  Judge Theiler found that Bockting permitted Petitioner to pursue his claim for habeas relief, notwithstanding her earlier determination that he had failed to exhaust his state court remedies.  Judge Theiler also found that K.'s statements to the nurse and the doctor were "testimonial" in part under Crawford and were therefore improperly admitted.  Judge Theiler also found that the admission of K.'s statements to Officer Kakuda, Nurse Martinez, and Dr. Minten had a substantial and injurious effect on the jury's verdict.

**Analysis**

In his objections, Respondent argues at length that the Ninth Circuit's decision in <u>Bockting</u> was wrongly decided. However, such arguments cannot serve as a basis for denying the petition, since <u>Bockting</u> is currently the law of this circuit.

Aside from criticisms of <u>Bockting</u>, Respondent's objections to the R&R focus on:

1. Whether the petition should be dismissed for failure to exhaust state court remedies.

2. Whether the statements that K. made to Nurse Martinez or Dr. Minten were "testimonial" under <u>Crawford</u> (Respondent concedes that K.'s statements to Officer Kakuda were testimonial).

3. Whether the trial court's admission of K.'s out-of-court testimonial statements was harmless error.

The Court considers each of these issues in turn below.

1. <u>Exhaustion of State Court Remedies</u>

Respondent argues that the habeas petition should be denied because Petitioner failed to exhaust his state remedies. Under 28 U.S.C. § 2254, a habeas petition challenging a state court conviction generally may not be granted unless the applicant has exhausted the remedies available in state court.

In her initial R&R on this matter, Judge Theiler recommended that the habeas petition should be denied for failure to exhaust state court remedies.[2] In light of <u>Bockting</u>, however, Judge Theiler no longer recommends that the petition be denied for failure to exhaust. First, Judge Theiler found that <u>Bockting</u> "endorsed reading a 'retroactivity exception' into the exhaustion requirement." (R&R at 8). In addition, Judge Theiler found that it would be futile to require Petitioner to return to state court, since the Washington Supreme Court (in contrast to the Ninth Circuit in <u>Bockting</u>) has held that <u>Crawford</u> does not apply retroactively to cases on collateral review.

---

[2] Judge Theiler does not renew this recommendation in the pending R&R, and the Court finds that it is not necessary to reach the previous R&R's recommendations regarding exhaustion.

1

a.      Retroactivity Exception to Exhaustion

2

In the pending R&R, Judge Theiler found that <u>Bockting</u> permits Petitioner to pursue his

3

habeas petition, even if he had failed to exhaust his state court remedies.  Judge Theiler explained:

4

5

6

7

8

9

> [T]he court concludes that several factors weigh in favor of resolving the case on the merits.  First, the Ninth Circuit in <u>Bockting</u> endorsed reading a "retroactivity exception" into the exhaustion requirement.  In discussing the interplay between retroactivity and exhaustion, the <u>Bockting</u> court commented that "the [Supreme] Court has impliedly endorsed the application of <u>Teague</u> in the [habeas] context."  399 F.3d at 1021.  The Ninth Circuit also found that Congress "intended to preserve the <u>Teague</u> exceptions [in habeas cases] because [the statute governing habeas petitions] explicitly provides for their application in proceedings involving state habeas petitions."  <u>Id.</u>, <u>citing</u> 28 U.S.C. § 2254(e).  Finally, the Ninth Circuit implied that a strict reading of the exhaustion requirement – one that would not permit a petitioner to benefit from retroactive application of a new rule – raises a "serious constitutional problem ... by depriving individuals of bedrock principles of Due Process."  <u>Id.</u>, <u>citing</u> <u>Ferguson v. Palmateer</u>, 321 F.3d 820 F.3d 820, 823 (9th Cir. 2003).

10

R&R at 8-9.

11

In his objections to this recommendation, Respondent argues:

12

13

14

15

> [T]here is no "retroactivity exception" to the exhaustion requirement.  Although Respondent understands that the <u>Bockting</u> decision suggests that the AEDPA [Anti-Terrorism and Effective Death Penalty Act] requirements, and, therefore, the § 2254(b)(1)(A)'s requirements for exhaustion, may be overcome "to avoid the serious constitutional problem rais[ed] by depriving individuals of bedrock principles of Due Process," that decision is contrary to Supreme Court precedent.

16

17

(Dkt. No. 36 at 8).  Because Respondent's objections are based on a view that <u>Bockting</u> was wrongly decided, the Court must reject such arguments.

18

b.      Futility

19

20

21

22

23

Judge Theiler also notes that the Washington Supreme Court, unlike the Ninth Circuit,  has held that <u>Crawford</u> does not apply retroactively to collateral proceedings.  <u>See</u> <u>In re Markel</u>, 154 Wn.2d 262 (2005).  Indeed, the Washington Supreme Court in <u>Markel</u> explicitly considered and rejected the Ninth Circuit's retroactivity analysis in <u>Bockting</u>.  <u>Id.</u> at 271 n.4.  As such, Judge Theiler found that requiring Petitioner to pursue remedies in state court would be futile.

24

25

26

Some courts have held that a "futility exception" to exhaustion applies when "the highest state court has recently decided the same legal question adversely to the petitioner."  <u>Fisher v. State</u>, 169 F.3d 295, 303 (5th Cir. 1999); <u>see also</u> <u>Sweet v. Cupp</u>, 640 F.2d 233, 236 (9th Cir. 1981).  Although

1  Respondent notes that the futility doctrine is disfavored and is rarely applied, the Court agrees with

2  Judge Theiler that application of the doctrine would be appropriate here, given the Washington

3  Supreme Court's recent decision in Markel.

4  2.      Testimonial Nature of K.'s Statements

5          Respondent next argues that K.'s statements to Nurse Martinez and Dr. Minten should not be

6  deemed "testimonial" under Crawford.  As noted earlier, the Supreme Court in Crawford did not

7  offer a comprehensive definition of the term "testimonial."  However, the Court expressly held that

8  "[s]tatements taken by police officers in the course of interrogations" are testimonial.  Id. at 52.  As a

9  result, Respondent concedes that K.'s statements to Officer Kakuda were testimonial under

10 Crawford.  More generally, the Crawford Court suggested that "statements that were made under

11 circumstances which would lead an objective witness reasonably to believe that the statement would

12 be available for use at a later trial" should be regarded as testimonial.  Id.  Applying this standard,

13 Judge Theiler recommends that certain portions of K.'s statements to Nurse Martinez and Dr. Minten

14 should be regarded as testimonial under Crawford.

15         a.      K.'s Statements to Nurse Martinez

16         Therese Martinez, an emergency room nurse, interviewed K. on June 22, 2000.  Nurse

17 Martinez testified that she was "was assigned to do her sexual assault, the kit, we call it." (Trial

18 Transcript at 776).  Nurse Martinez testified that K. made the following statements to her, which the

19 nurse recorded verbatim:

20         He touched me on the – all over my body.  I was asleep on the couch, he started touching on
        my privates.  When he started, he put his arms around me.  He had his pants off.  [H]e
21      unbuttoned my pants.  He put a blanket over my body to cover me up.  It was his hand inside
        of me.  I told him it hurt.  But he didn't stop. . . .
22
        After J. came in he gave me money to go buy ice cream.  J. went downstairs to call the cops.
23      I ate my ice cream first and then he did it again.  He used his whole hand.  He put his finger in
        where I peed.  He started rubbing it and it hurt.  J. called the cops again.  They had came and
24      arrested him.

25 (Trans. at 780-81).  In her testimony, Nurse Martinez did not indicate that K. identified Petitioner by

26 name.   There is also no evidence that the police were present during Nurse Martinez's examination.

b.    K.'s statements to Dr. Minten

Dr. Nancy Minten, an emergency room physician, examined K. on June 22, 2000 following

Nurse Martinez's initial contact with K.   Dr. Minten testified that her hospital follows a "very strict

protocol" in examining sexual assault victims.  Id. at 834.  Dr. Minten described the following

statements that K. made to her:

> K. had said, quote, he touched me all over my body, end quote.  At this time, she points to her
> head, her neck, her chest, her abdomen.  She then stated that he, quote, putted his finger
> inside my panties and touched me down there, end quote, and at this time she's pointing to
> her pubic area.  She states that with his finger was rubbing on my privates until it hurt,
> quote/unquote.

Id. at 836.

Dr. Minten did not state that K. identified Petitioner as the person who touched her.

However, Dr. Minten testified that before she conducted her exam, "[t]he nurse had informed me that

the little girl had been – alleged that she had been sexually assaulted by a male who was at the house

that she was being baby-sat for."  Id. at 835.  Dr. Minten did not indicate that the police were  present

during the examination.

c.    Testimonial Nature of K.'s Statements to Nurse Martinez and Dr. Minten

Judge Theiler has recommended that K.'s statements to the nurse and to the doctor should be

regarded as testimonial in part and non-testimonial in part.  In reaching this recommendation, Judge

Theiler examined several post-Crawford cases that involved hearsay statements to medical

professionals.  Judge Theiler noted that the courts in People v. Vigil, 104 P.3d 258 (Colo. App.

2004), and In re T.T., 815 N.E.2d 789 (2004), had found that statements to medical professionals

were testimonial, while the courts in State v. Vaught, 682 N.W.2d 284 (Neb. 2004), and State v.

Fisher, 130 Wn. App. 1 (2005), found that such statements were not testimonial.

Judge Theiler indicated that "[t]he basic principle to be gleaned from these cases seems to be

that statements made for medical purposes are non-testimonial while statements made for

prosecutorial purposes are."  (R&R at 11).  Judge Theiler concluded:

> Applying these nascent principles – which do not appear to have been applied by the Ninth
> Circuit in any cases thus far – to the claim here, the court finds that the statements to Nurse

Martinez and Doctor Minten are, as petitioner suggests, in part testimonial and in part non-testimonial. Insofar as they relate to the identity of the person who touched K., the statements are testimonial. It appears that both the nurse and doctor worked in the emergency room at the local hospital and came into contact fairly frequently with victims of sexual abuse. When they did, they followed a "very strict protocol," as Dr. Minten called it. This protocol included the search for, and possible collection of, evidence. As Nurse Martinez described it, she was "assigned to do [K.'s] sexual assault, the kit, we call it." The "kit" included forms and procedures "for collection of evidence that we go through." Thus, while the nurse and doctor may not have technically been part of a "child protection team,' as the doctor was in *Vigil*, they formed a de facto child protection team by virtue of the specialized manner in which they performed their jobs. Therefore, K's statements to them were made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Accordingly, the statements made by K. inculpating the petitioner are testimonial and trigger the protections imposed by Crawford.

(R&R at 11-12) (internal citations omitted).

While this recommendation is carefully reasoned, the Court declines to adopt this recommendation in light of subsequent developments in relevant case law. First, the recommendation relies in significant part on the reasoning of the Colorado Court of Appeals in People v. Vigil, 104 P.3d 258 (Colo. App. 2004). In that case, the court held that statements that a seven-year old child made to a doctor were testimonial under Crawford, noting that "[t]he doctor was a member of a child protection team" and that "[a]lthough the doctor himself was not a government officer or employee, he was not a person "'unassociated with government activity.'" Id. at 265. Applying a similar analysis, Judge Theiler concluded that Nurse Martinez and Dr. Minten served as a "de facto child protection team."

However, after Judge Theiler issued the R&R, the Colorado Supreme Court reversed key provisions of the lower court's ruling in Vigil. See People v. Vigil, ___ P.3d ___, 2006 WL 156987 (Colo. Jan. 23, 2006). In particular, the Colorado Supreme Court held that the child's statements to the doctor were not testimonial in nature by virtue of the fact that the doctor was a member of a child protection team. The court noted the doctor was not a government official, nor was his examination conducted with a police officer present. The court found that "[t]he fact that the doctor was a member of a child protection team does not, in and of itself, make him a government official absent a

1   more direct and controlling police presence." Id. at * 6.  Therefore, the court concluded that "under

2   Crawford's explicit guidance, the child's statements to the doctor are not testimonial evidence." Id.

3        Here, as in Vigil, there is no evidence that Nurse Martinez or Dr. Minten were government

4   officials, nor is there evidence that the police were present during their examinations.  Although the

5   nurse and the physician followed a strict protocol used in examining sexual assault victims that

6   included the collection of evidence, the Court does not regard that consideration as sufficient to

7   support a conclusion that K.'s statements were "testimonial" under Crawford.  Instead, the Court

8   agrees with and applies the reasoning of the Colorado Supreme Court in Vigil.

9        The Court also agrees with Respondent's argument that K.'s age should be taken into account

10  in considering whether her statements to Nurse Martinez and Dr. Minten were "made under

11  circumstances which would lead an objective witness reasonably to believe that the statement would

12  be available for use at a later trial."  Crawford, 541 U.S. at 54.  As Respondent notes, some courts

13  have interpreted this language to hold that a court must consider whether an "objective witness" of

14  the declarant's age would have reasonably believed that a statement would be available for later use

15  at trial.  Respondent points to State v. Scacchetti, 690 N.W. 2d 393 (Minn. App. 2005), where the

16  court held that a three-year old's statements to a nurse were not testimonial.  The Scacchetti court

17  found that the defendant had to show "that the circumstances surrounding the contested statements

18  led the three-year-old to reasonably believe her disclosures would be available for use at a later trial,

19  or that the circumstances would lead a reasonable child of her age to have that expectation."  Id. at

20  396.  But see People v. Sisavath, 118 Cal. App. 4th 1396, 1402 n.3 (2004) (finding that "objective

21  witness" standard refers to whether a statement is given under circumstances in which its use in a

22  prosecution is reasonably foreseeable by an "objective observer"); Anderson v. State, 833 N.E. 2d

23  119, 125 (Ind. App. 2005) (suggesting that "objective witness" standard should be evaluated from the

24  perspective of the person taking a statement).

25        The Colorado Supreme Court in Vigil recently adopted a similar approach as the Scacchetti

26  court.  Like this case, Vigil concerned statements that a seven-year old made to medical

ORDER - 10

professionals.  The <u>Vigil</u> court concluded that "the 'objective witness' language in <u>Crawford</u> refers to an objectively reasonable person in the declarant's position."  <u>Vigil</u>, 2006 WL 156987 at * 7.  The court found that "an assessment of whether or not a reasonable person in the position of the declarant would believe a statement would be available for use at a later trial involves an analysis of the expectations of a reasonable person in the position of the declarant" and that "[e]xpectations derive from the circumstances, and, among other circumstances, a person's age is a pertinent characteristic for analysis."  <u>Id.</u> at * 8.  Applying these principles, the court held:

> [N]o objective witness in the position of the child would believe that his statements to the doctor would be used at trial.  Rather, an objective seven-year-old child would reasonably be interested in feeling better and would intend his statements to describe the source of his pain and his symptoms.  In addition, an objectively reasonable seven-year-old child would expect that a doctor would use his statements to make him feel better and to formulate a medical diagnosis.  He would not foresee the statements being used in a later trial.  Thus, from the perspective of an objective witness in the child's position, it would be reasonable to assume that this examination was only for the purpose of medical diagnosis, and not related to the criminal prosecution.  No police officer was present at the time of the examination, nor was the examination conducted at the police department.  The child, the doctor, and the child's mother were present in the examination room.

<u>Id.</u> at * 8.

The Court agrees with the reasoning adopted by the Colorado Supreme Court in <u>Vigil</u> and finds that the circumstances in this case are similar.  As in <u>Vigil</u>, the Court finds that an objective seven-year old would not believe that her statements to medical professionals would be available for use at a later trial under the circumstances here.  Therefore, the Court finds that K.'s statements to Nurse Martinez and Dr. Minten were not testimonial under <u>Crawford</u>.

3.    <u>Harmless Error Analysis</u>

Finally, the Court must consider whether the trial court's admission of K.'s testimonial statements constitutes harmless error.  Applying the standards set forth in <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993), Judge Theiler found that the admission of K.s' statements to Officer Kakuda, Nurse Martinez, and Dr. Minten could not be regarded as harmless.  However, because the Court concludes that K.'s statements to Nurse Martinez and Dr. Minten were not testimonial, the Court's harmless error analysis turns on the admission of K.'s testimonial statements to Officer Kakuda.  As noted

1    earlier, Respondent concedes that K.'s statements to Officer Kakuda's were testimonial under

2    Crawford.

3        "In the context of habeas petitions, the standard of review is whether a given error 'had

4    substantial and injurious effect or influence in determining the jury's verdict.'" Christian v. Rhode, 41

5    F.3d 461, 468 (9th Cir. 1994) (quoting Brecht, 507 U.S. at 637).  An error is harmless if the Court

6    "can say with fair assurance that it did not have a substantial effect, injurious to the defendant, on the

7    jury's decision-making process."  Arnold v. Runnels, 421 F.3d 859, 867 (9th Cir. 2005).  Put another

8    way, the reviewing court must ask "Do I, the judge, think that the error substantially influenced the

9    jury's decision?"  O'Neal v. McAninch, 513 U.S. 432, 436 (1995).  A habeas petition must be

10   granted if the reviewing court is in "grave doubt" as to the harmlessness of the error.  Id. at 436-437.

11   The state "bears the risk of doubt" in harmless error analysis.  Valerio v. Crawford, 306 F.3d 742,

12   762 (9th Cir. 2002).

13       Respondent argues that the trial court's error in admitting K.'s statements to Officer Kakuda

14   was harmless under the Brecht standard, noting that the Washington Court of Appeals upheld the

15   conviction based on the sufficiency of other evidence in the record to support the conviction.

16   However, this Court's review does not depend on whether there was sufficient untainted evidence in

17   the record to support the conviction.  As the Ninth Circuit has noted, "[t]he question posed . . . is not

18   whether the evidence was sufficient or whether the jury would have decided the same way even in the

19   absence of the error."  Arnold, 421 F.3d at 869.  Instead, "[t]he question is whether the error

20   influenced the jury."  Id.

21       Here, the Court has grave doubts as to the harmlessness of the trial court's admission of K.'s

22   statements to Officer Kakuda.  Officer Kakuda was the first witness called by the state at trial and

23   testified that he interviewed K. very shortly after the police had been called.  (Trans. at 611-12).

24   Officer Kakuda testified that K. "[t]old me that her, quotes, dad's friend, end quotes, while she was

25   sleeping on a couch in the living room of [her home], quotes, put his hands in my pants, end quotes.

26   That's how the conversation started."  Id. at 599.  Officer Kakuda also testified that K. told him that

1    "dad's friend also had his hand inside her underwear" and that "I asked – K. was asked if dad's friend

2    was touching her, quotes, private part, end quotes.  She replied, quotes, yes, end quotes.  Also she

3    was nodding her head, up and down in a 'yes' motion."  Id. at 601.  In addition, Officer Kakuda

4    testified that K. "was also asked if it occurred in the, quotes, front or back, end quotes.  She replied,

5    quotes, front.  And, quotes, it hurt, end quotes."  Id.  Officer Kakuda also testified that "I asked her –

6    she was finally asked about what her dad's friend did to her, quotes, right or wrong, end quotes.  She

7    replied, quotes, wrong, end quotes.  That's why my sister called the, quotes, cops, end quotes."  Id.

8    at 604-05.

9        The state highlighted Officer Kakuda's testimony in opening statement and closing argument.

10   In its opening, the state indicated:

11        You are going to hear that when Officer Kakuda was interviewing [K.], she described what
         happened.  She was asleep at first.  But dad's friend put his hands in her pants.  You are going

12        to hear Officer Kakuda talk about the fact that he's an experienced law enforcement officer.
         He's had some dealings with children as a law enforcement officer, interviewing them for a

13        variety of situations.  He's not a professional child interviewer.  But again, he's a professional
         officer asking the questions he needed to ask.  You will hear his testimony and you will hear

14        him testify as to what Katrina told him on that day.

15   Id. at 583.  In closing, the state also noted that "[w]e also have [K.] talking to Officer Kakuda.  We

16   have her telling Officer Kakuda, telling what happened, dad's friend stuck his hand in my pants, in my

17   privates, it hurt.  That's within a half hour of the incident time."  Id. at 940.

18        In sum, Officer Kakuda's testimony regarding K.'s statements was a substantial part of the

19   state's case.  To be sure, J. testified that she saw Petitioner touching her sister inappropriately and

20   both Nurse Martinez and Dr. Minten recounted K.'s statements that Petitioner had touched her

21   private areas.  Nonetheless, the Court cannot say with fair assurance the admission of Officer

22   Kakuda's testimony regarding K.'s statements was harmless.  The state emphasized Officer Kakuda's

23   status as a professional and experienced law enforcement officer, a factor that added authority to his

24   testimony and served to buttress the testimony of Nurse Martinez and Dr. Minten.  In addition,

25   Officer Kakuda spoke with K. very shortly after the police were called and before the nurse and the

26   physician interviewed K, facts that gave his testimony greater weight.  Furthermore, while K. did not

ORDER - 13

1   identify Mr. Miller by name to Officer Kakuda, her statement to the officer identified Mr. Miller with

2   greater specificity (i.e., as "dad's friend") than her statements to Nurse Martinez or Dr. Minten.

3   Finally, since the medical and physical evidence did not clearly establish that K. had been molested,

4   the evidence in the record of Petitioner's guilt was not so overwhelming that the error in admitting

5   Officer Kakuda's testimony can be regarded as harmless.

6       Therefore, the Court finds that the error in admitting Officer Kakuda's testimony regarding

7   K.'s statements was not harmless under the <u>Brecht</u> standard.  The Court cannot say with fair

8   assurance that the admission of this testimony did not have a substantial and injurious effect or

9   influence on the jury's verdict.

10                                **Conclusion**

11      Under the Ninth Circuit's decision in <u>Bockting</u>, the Supreme Court's ruling in <u>Crawford</u>

12  applies retroactively to this case.  The Court declines to adopt Judge Theiler's recommendation that

13  K.'s statements to Nurse Martinez and Dr. Minten should be regarded as testimonial under the

14  standards announced in <u>Crawford</u>.  However, it is undisputed that K.'s statements to Officer Kakuda

15  were testimonial.  As a result, the Court must find that the admission of K.'s statements to Officer

16  Kakuda violated Petitioner's rights under the Confrontation Clause.  The Court further finds that this

17  constitutional error was not harmless.

18      Therefore, the Court GRANTS Petitioner Leon Miller's petition for a writ of habeas corpus.

19  Petitioner's conviction in Spokane County Superior Court cause no. 00-1-01469-5 is hereby

20  VACATED.

21      The Clerk is directed to send copies of this order to all counsel of record.

22      Dated:  February 21, 2006.

23
                                    s/Marsha J. Pechman
24                                  Marsha J. Pechman
                                    United States District Judge
25

26

ORDER - 14