UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LEON EUGENE MILLER,<br><br>Petitioner,<br><br>v.<br><br>GARY FLEMING,<br><br>Respondent. | CASE NO. C04-1289-MJP-MAT<br><br><br><br>REPORT AND RECOMMENDATION |

INTRODUCTION

In 2000, petitioner Leon Miller was convicted of two counts of child molestation after a jury trial in a Washington state court. The conviction was based in part on the testimony of three witnesses who recounted the hearsay statements of the seven-year-old victim, who had been found not competent to testify and did not appear at trial. While serving a 66-month sentence, petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. This court granted the petition, finding that the hearsay testimony had violated petitioner's rights under the Confrontation Clause of the Sixth Amendment, as those rights had been articulated by the Supreme Court in *Crawford v. Washington*, 541 U.S. 36 (2004).

The granting of the petition, however, was vacated by the Ninth Circuit Court of Appeals after the Supreme Court clarified that *Crawford* did not apply to cases on habeas review. *See Wharton v. Bockting*, 127 S. Ct. 1173 (2007). The Ninth Circuit remanded the case to this court to reconsider whether petitioner's Confrontation Clause rights had been violated, but this time based upon an analysis of pre- *Crawford* law. *See Miller v. Fleming*, No. 06-35244, Memorandum Disposition at 3 (March 19, 2007). The court directed the parties to submit supplemental briefs addressing this issue. They have done so, and having reviewed the parties' submissions, the court concludes once again that petitioner's rights were violated and the petition should be granted.

## BACKGROUND

On direct appeal, the Washington Court of Appeals summarized the facts of petitioner's case as follows:

> On June 22, 2000, K., a seven-year-old girl, was home with J., her twelve-year-old sister, and their grandfather. Mr. Miller came to the house to speak with their father about a car. Although their father was not home, Mr. Miller came in the house to wait.
>
> Mr. Miller sat on the couch and watched television with the two girls. K. had fallen asleep on the couch. The grandfather left the house to run an errand, while J. went to clean her room. When J. came back into the room, she saw Mr. Miller touching K.'s vaginal area.
>
> His hand was under K.'s clothes. J. woke K. up and took her outside. J. then called 911 and told the operator what she had seen. The operator told J. to wait for her parents to come home as they would know what to do. When J. got off the phone, she could not find K. She went back to the living room and saw K. Mr. Miller was touching K. again and she was telling Mr. Miller no. J. again took K. out of the house and called the police, who arrived several minutes later.
>
> Officer Blaine Kakuda responded to the call. He spoke with K., who was scared and timid. K. told the officer that her dad's friend had put his hand down her

> pants while she was asleep. She said his hand was inside her underwear. The officer then arrested Mr. Miller.
>
> K. told a nurse at the emergency room that Mr. Miller touched her. She also told the emergency room doctor that Mr. Miller put his finger where she "peed." The doctor noticed scratches on K.'s abdomen. Her vaginal area was red, which was consistent with irritation or rubbing.
>
> Mr. Miller waived his *Miranda* rights and spoke with Detective Hilding Anderson. Mr. Miller said that K. was climbing on him in a sexual manner, but his hand was not in her pants. He said he might have accidentally touched her when he was pushing her away.
>
> The State charged Mr. Miller with one count of first degree rape of a child and one count of first degree child molestation. It later amended the information to one count of first degree child rape or, in the alternative, first degree child molestation, and one count of first degree child molestation.

(Doc. #18, Ex. 2 at 1-3) (footnote omitted).

Prior to Petitioner's trial, the court held an evidentiary hearing to determine the admissibility of K.'s hearsay statements to (1) Officer Kakuda, (2) the nurse at the emergency room (Nurse Martinez), and (3) the emergency room doctor (Dr. Minten). The court found that K. was not competent to testify at trial, but that her hearsay statements were admissible under various exceptions to the hearsay rule. The jury found petitioner guilty of two counts of first degree child molestation, and the court sentenced him to 66 months.

Petitioner appealed to the Washington Court of Appeals, which affirmed his convictions. (Doc. #18, Ex. 2 at 1). His subsequent Motion for Reconsideration was denied (*id*., Exs. 8, 9), as was his Petition for Review in the Washington Supreme Court. (*Id*., Exs. 10, 11). On May 27, 2003, Petitioner filed a Personal Restraint Petition ("PRP") in the Washington Court of Appeals. (*Id*., Ex. 13). The court dismissed the PRP. (*Id*., Ex. 14). Similarly, his Motion for Discretionary Review in the Washington Supreme Court was denied. (*Id*., Ex. 16). Petitioner's state collateral

review by way of this PRP thus became final September 30, 2003. (*Id*., Ex. 19). Petitioner filed no other PRPs in the Washington courts.

Turning to the federal courts, petitioner filed the instant petition for writ of habeas corpus on May 28, 2004. (Doc. #4). In it, he framed the following ground for relief:

> "Conviction obtained in violation of the Confrontation Clause of the Sixth Amendment of the United States Constitution."[1]

(Doc. 4 at 5, 8). He clarified this rather broad assertion in his Reply, where he contends that the trial court's admission of K.'s hearsay statements through the testimonies of the three prosecution witnesses to whom she had made these statements (Officer Kakuda, Nurse Martinez, and Dr. Minten) violated his rights under the Sixth Amendment. Specifically, he argues that his right to be confronted with the witnesses against him was violated because he was not afforded the opportunity to cross-examine K. at the time she made the statements nor during his trial. ( *See* Doc. 13 at 18). He further claims that the admission of the statements was not harmless error. (*See id.* at 10-16).

After respondent filed an answer and petitioner a reply, the court issued its first Report and Recommendation ("R&R") in this matter on December 23, 2004. (Doc. #16). In the R&R, the court found that petitioner had not properly exhausted his Sixth Amendment claim in state court because he had not presented the same legal theory to the state court that he used here. (*Id*. at 16). The court further found that petitioner had procedurally defaulted on the claim and had not

---

[1] The Sixth Amendment provides in pertinent part that: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.

shown a basis for excusing this procedural default. Accordingly, the court recommended that the petition be dismissed.

While the R&R was pending before the district court, the Ninth Circuit Court of Appeals rendered its decision in *Bockting v. Bayer*, 399 F.3d 1010 (9th Cir. 2005), *Opinion Amended on Denial of Rehearing*, 408 F.3d 1127 (9th Cir. 2005), *Rehearing en Banc Denied*, 418 F.3d 1055 (9th Cir. 2005). *Bockting* held that the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004), applied retroactively to collateral proceedings. Because *Crawford* changed the standard governing claims made under the Confrontation Clause of the Sixth Amendment, the district court referred the matter back to the undersigned to consider petitioner's claim under *Bockting/Crawford*. (Doc. #20).

After additional briefing was complete, the undersigned recommended granting the petition in its second R&R. (Doc. #32). The district court disagreed with certain aspects of the R&R but adopted the overall conclusion and granted the petition. (Doc. #39). Both parties appealed to the Ninth Circuit. While the appeal was pending, the Supreme Court reversed the Ninth Circuit's decision in *Bockting*. *See Wharton v. Bockting*, 127 S. Ct. 1173 (2007). Because *Bockting* and *Crawford* had formed the basis of this court's granting of petitioner's habeas petition, the Ninth Circuit vacated the court's ruling. *See Miller v. Fleming*, No. 06-35244, Memorandum Disposition at 3 (March 19, 2007). However, the Ninth Circuit found that petitioner had also challenged his conviction based upon pre-*Crawford* law, the Ninth Circuit remanded the case to this court for further consideration.

The court directed the parties to file supplemental briefs. (Doc. #61). They have done so (Doc. #62, #65, #68), and the matter is now ready for review.

DISCUSSION

Standard of Review under Habeas Statute

The Anti-terrorism and Effective Death Penalty Act ("AEDPA") governs because petitioner filed his petition here on May 28, 2004. *See Lindh v. Murphy* , 521 U.S. 320, 326 (1997); *Barajas v. Wise*, 481 F.3d 734, 738 (9th Cir. 2007). Under AEDPA, petitioner may obtain relief only in one of two circumstances: First, he may obtain relief if the state court's denial of his claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "Clearly established Federal law" refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions. *See Carey v. Musladin*, __ U.S. __, 127 S.Ct. 649, 653 (2006). A state-court decision is "contrary to" clearly established Supreme Court precedent if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state-court decision is an "unreasonable application" of federal law "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407.

Second, petitioner may obtain relief if the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Federal courts must presume the correctness of the state court's factual findings, but petitioner may rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Finally, a federal court sitting in habeas jurisdiction must be convinced that the state court's decision is "more than incorrect or erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The state court's decision must be "objectively unreasonable."

*Id.*

Here, it does not appear that the Washington Court of Appeals reached the federal constitutional question that is posed by the instant habeas petition. In such cases, the standard of review is somewhat different than discussed above. When a state court does not address a petitioner's federal claim, the Ninth Circuit has held that an independent review of the record is the only means of deciding whether the state court's decision was objectively reasonable. *See Greene v. Lambert*, 288 F.3d 1081, 1089 (9th Cir. 2002), *citing Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000). More recently, the Ninth Circuit has stated that when a state court has not reached an issue, a habeas court's review is "*de novo*." *Nooner v. Norris*, 402 F.3d 801, 810 (9th Cir. 2005), *citing Wiggins v. Smith*, 539 U.S. 510, 534 (2003).

The specific issues before the court are (1) what standard to apply to determine whether the hearsay testimony against petitioner violated the Confrontation Clause; (2) whether, under that standard, the hearsay statements violated the Confrontation Clause; and (3) if so, whether any violations had a substantial and injurious effect or influence on the jury's verdict. *See Brecht v. Abrahamson*, 507, U.S. 619, 637 (1993).

1. What Standard Applies to Hearsay Statements

In its Order directing the parties to submit supplemental briefing, the court requested that the parties address what standard to apply in assessing whether the hearsay statements violated petitioner's constitutional rights. (Doc. #61 at 2). This question was important to resolve because *Crawford* had distinguished between "testimonial" and "nontestimonial" statements and had limited its application to the former. Although *Crawford* itself clearly no longer applies to the instant case, respondent had argued to the Ninth Circuit that petitioner still had to meet

*Crawford's* requirement of showing that the hearsay statements used to convict him had been testimonial in nature. *Miller*, No. 06-35244 at 6. Otherwise, respondent argued, petitioner could not claim that the statements violated the Confrontation Clause.

The Ninth Circuit avoided the question of whether petitioner had to show that the statements used against him were testimonial, as the issue had not been properly briefed by the parties. Accordingly, after the Ninth Circuit remanded the case here, the court directed the parties to address the issue in their supplemental briefs. In his supplemental brief, petitioner argues that *Crawford's* "testimonial/non-testimonial" distinction is no longer relevant because *Crawford* does not apply retroactively to cases such as petitioner's on habeas review. (Doc. #62 at 9). The proper standard, petitioner maintains, is whether the statements violated pre-*Crawford* principles articulated by the Supreme Court in *Ohio v. Roberts*, 448 U.S. 56 (1980) and its progeny, *Lee v. Illinois*, 476 U.S. 530 (1986), *Idaho v. Wright*, 497 U.S. 805 (1990), and *Lilly v. Virginia*, 527 U.S. 116 (1999). (Doc. #62 at 8). In response, respondent counters that after *Crawford*, the test announced in *Roberts* no longer applies to nontestimonial hearsay. (Doc. #65 at 10-11). Petitioner, in his reply, contends that on the day that respondent filed his supplemental brief, the Ninth Circuit supplied the answer to the question of what standard applies to pre- *Crawford* hearsay statements in *Winzer v. Hall*, No. 06-55327, __ F.3d __, 2007 WL 2080154 (9th Cir. July 23, 2007).

In *Winzer*, the Ninth Circuit reviewed a district court's denial of habeas relief to a state prisoner whose conviction had been obtained based in part on hearsay statements by the victims. In *Winzer*, a police officer interviewed a mother and daughter a few hours after an argument had transpired between the mother and her former boyfriend, Marcus Winzer. The mother told the

officer that Winzer had threatened them by saying, "I'll smoke you and your daughter." *Id.* at *6. However, at trial, the prosecutor did not call the mother as a witness. Through the testimony of the police officer, the prosecutor was able to introduce the statement of the mother that described Winzer's threat. Winzer was convicted of making a terrorist threat and was sentenced to nine years in prison. *Id.*

Winzer's habeas petition was denied by federal district court. On appeal, the Ninth Circuit began its review by stating that *Crawford* did not apply "because it was decided after Winzer's trial and appeal." *Id.* In the absence of *Crawford*, the Ninth Circuit applied the test announced in *Roberts*:

> Under *Roberts*, admission of a hearsay statement does not violate the Confrontation Clause if *[1] "the evidence falls within a firmly rooted hearsay exception," or [2] if there are other "particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statements' reliability*."

*Id.* at *8 (internal citations and quotes omitted) (emphasis added).

The Ninth Circuit in *Winzer* did not discuss the distinction between testimonial and nontestimonial statements. Applying the two-pronged *Roberts* test, the court found that the hearsay statements admitted at trial had violated Winzer's rights under the Sixth Amendment. *Id* at *10. Consequently, the Ninth Circuit reversed the district court's denial of the habeas petition. *Id* at *12.

Respondent has not filed a surreply or any other pleading challenging petitioner's reliance on *Winzer* for the proposition that, in the absence of *Crawford*, the correct standard to apply is *Roberts'* two-prong test. Accordingly, the court will assess whether the hearsay statements offered at petitioner's trial fell into either of *Roberts's* two exceptions to the Confrontation

Clause's general prohibition against use of out-of-court statements.

2. Whether Hearsay Statements at Petitioner's Trial Were Admissible Under *Roberts*

The prosecutor used three different witnesses to present the victim's statements about petitioner's actions: Officer Kakuda, Nurse Martinez, and Dr. Minten. The court will address each in turn.

Officer Kakuda

As mentioned, Officer Kakuda responded to the 911 call and spoke to K., the victim, shortly after he arrived at the house. Before K. spoke to the officer, her older sister told her that she had called the police "because of what [petitioner] did to her." (Doc. #18, Ex. 20 at 194). K. then told the officer that petitioner had put his hand down her pants while she was asleep. (Doc. #18, Ex. 2 at 2). K. also said that petitioner's hand was inside her underwear. (*Id*.) The Washington Court of Appeals found that the admission of Officer Kakuda's testimony, recounting K.'s statements to him, was not permissible under Washington law. (*Id*. at 5). However, the court found that the error was harmless, because K.'s older sister J. had testified about the same events. (*Id*.)

Here, it is undisputed that K.'s statements to Officer Kakuda do not fall into a firmly-rooted hearsay exception, the first prong of the *Roberts* test. Rather, respondent argues that K.'s statements to Officer Kakuda complied with *Roberts* because the state trial court found her statements to be reliable and the totality of the circumstances support that determination. (Doc. #65 at 12-13). In particular, respondent points to the officer's testimony at trial, in which he stated that, although K. was shy at first, she became more comfortable as the interview proceeded. (*Id*. at 14-15). Officer Kakuda further testified that K. appeared to understand his questions and

gave direct answers, which appeared to him to be truthful. (*Id*).

The court, however, finds that certain aspects of K.'s interview with Officer Kakuda do not inspire complete confidence in the reliability of her answers. First, as the Washington Court of Appeals noted, there is "no indication that anyone asked K. whether she understood the difference between the truth and a lie." (Doc. #18, Ex. 2 at 5). Second, before she spoke with Officer Kakuda, K.'s older sister told her that she had called the police "because of what [petitioner] did to her." (Doc. #18, Ex. 20 at 194). Thus, the idea that something bad had happened was already planted in the young girl's mind. Third, she was timid and Officer Kakuda was an authority figure. A scared seven-year-old answering questions from a police officer, immediately after her older sister has told her the reason for the officer's presence, does not constitute sufficient indicia of reliability, such that cross-examination would have been of "marginal utility." *Wright*, 497 at 823. Accordingly, the hearsay testimony of Officer Kakuda violated petitioner's rights under the Confrontation Clause.

Having determined that Officer Kakuda's hearsay testimony violated the Confrontation Clause, the court must further assess whether the error caused substantial and injurious effect or influence on the jury's verdict. *See Brecht v. Abrahamson*, 507, U.S. 619, 637 (1993). In the previous R&R, the court concluded that the error did have such an effect (Doc. #32 at 14), and that conclusion was adopted, and buttressed with further reasoning, by the district court. (Doc. #38 at 13-14). Respondent takes issue with some of the reasons offered by the district court. (Doc. #65 at 18-21). However, respondent's objections do not sway this court from its earlier conclusion that the jury had been substantially influenced by the officer's testimony. Therefore, the error was not harmless under *Brecht*.

Nurse Martinez and Dr. Minten

After she was brought to the hospital, K. spoke with an emergency room nurse (Nurse Martinez) and doctor (Dr. Minten). Her statements to the nurse and doctor were admitted at trial under a Washington hearsay exception for statements made for medical purposes. *See* Wash. ER 803(a)(4). The Washington Court of Appeals affirmed the admissibility of the statements, but observed that "[t]his is *not* a firmly rooted exception in cases involving young children." (Doc. #18, Ex. 2 at 6-7) (citation omitted; emphasis added).

Respondent argues first that under federal law, in contrast, a similar exception has been held to be firmly-rooted, and that the federal characterization of the exception should trump the state court's view. (Doc. #65 at 22, *citing White v. Illinois*, 502 U.S. 346, 356 n.8 (1992)). However, this argument does not accord proper deference to the state court's interpretation of its own evidentiary rules. The court will not supplant the view of the Washington Court of Appeals with that of the federal courts.

Next, respondent argues that the statements made by K. to Nurse Martinez and Dr. Minten were nonetheless sufficiently reliable to satisfy the second prong of *Roberts*. The Washington Court of Appeals so held, finding as follows:

> [K.] had no motive to lie. More than one person heard substantially the same statements, many of which were spontaneous and were made soon after the incident. Furthermore, there was an eyewitness to the incident. J. testified about what she saw and her testimony corroborated K.'s statements. K .'s statements to the medical providers can therefore be deemed reliable.

(Doc. #18, Ex. 2 at 7).

Thus, in finding that K.'s statements to the nurse and doctor were reliable, the state court relied primarily on the fact that K. had told the same story to Officer Kakuda and that K.'s sister

J. corroborated her statements. However, these factors are not the proper criteria by which to measure a statement's reliability. The Supreme Court has specifically disapproved the use of corroborating evidence to support a hearsay statement's reliability or trustworthiness. *See Wright*, 497 U.S. at 823. Consequently, the state court did not apply the correct standard in reaching this conclusion.

Rather, in light of the totality of the circumstances, it appears that K.'s statements to the nurse and doctor do not have sufficient indicia of reliability to pass muster under *Roberts*. K.'s statements came after she had already told her story to Officer Kakuda and her older sister was present during conversation with Nurse Martinez. These two factors likely had the effect of making it difficult for K. to retreat from her earlier story or to alter any key details when she recounted the story to medical staff. While the court does not question the state court's assertion that K. "had no motive to lie," under *Roberts* and its progeny, the crucial inquiry is not into a declarant's motives, but whether "evidence admitted under the Confrontation Clause [is] so trustworthy that cross-examination of the declarant would be of marginal utility." 397 U.S. at 823. Here, due to the factors cited above that may have influenced K.'s statements to Nurse Martinez and Dr. Minten, the court cannot say that cross-examination would have been of merely marginal utility. Accordingly, the hearsay testimony of Nurse Martinez and Dr. Minten violated petitioner's rights under the Confrontation Clause.

Having determined that the testimony violated the Confrontation Clause, the court must further assess whether the error caused substantial and injurious effect or influence on the jury's verdict. *See Brecht v. Abrahamson*, 507, U.S. 619, 637 (1993). In the previous R&R, the court concluded that the error did have such an effect, for the following reasons:

> [T]he court cannot imagine that the jury here was not "substantially influenced" by the repeated statements by K., through the three witnesses, that petitioner had touched her in various inappropriate ways. These statements effectively put K. in the witness stand at petitioner's trial without being subject to cross-examination. Indeed, the prosecutor stated four times in her closing argument that the jury had "heard from Katrina." (Doc. #18, Ex. 20 at 940, 947, 969, 971).

(Doc. #32 at 14).

In addition, the court notes that the other evidence presented against petitioner – the testimony of K.'s older sister J. and the physical evidence of the medical exam – was likely not as influential as the improperly admitted hearsay evidence. As petitioner points out, J.'s testimony had several inconsistencies (Doc. #62 at 18-19), and the physical evidence was acknowledged by the prosecutor to be "not helpful." (Doc. #65 at 25). Under these circumstances, the court finds that the admission at trial of K.'s statements to Nurse Martinez and Dr. Minten had a "substantial and injurious effect or influence" on the jury's verdict. Accordingly, the erroneous admission of the statements was not harmless and petitioner's habeas petition should be granted.

CONCLUSION

For the foregoing reasons, petitioner's petition for a writ of habeas corpus should be granted. A proposed Order accompanies this Report and Recommendation.

DATED this 20th day of September, 2007.

Mary Alice Theiler
United States Magistrate Judge